NEW-YORK,
August, 1814.

MARTIN
v.
BUCK.

MARTIN, HOPE, AND THORNLY *against* BUCK AND HUNTINGTON.

THIS was an action of *assumpsit.* The cause was tried at the *New-York* sittings, in June, 1813, before Mr. Justice *Van Ness,* when a verdict was taken for the plaintiffs, subject to the opinion of the court, on a case containing the following facts:

On the 25th November, 1809, the defendants, who are merchants residing in *New-York,* addressed a letter to the plaintiffs, a commercial house, at Liverpool, informing them that the defendants had engaged to ship on board the brig *Shepherdess,* of *Wiscasset,* bound to *Fayal,* which was to sail in about 15 days, 400 casks of flaxseed, which would be directed to the care of *Thomas Hazard & Co.* who would reship the flaxseed to *Liverpool,* addressed to the plaintiffs, and would draw on them for the freight to and charges at *Fayal;* but that *Hazard & Co.* would be instructed to ship it to such port in *Ireland* as the plaintiffs might direct, provided the plaintiffs should think it for the interest of the defendants to alter the destination, and the advice of the plaintiffs reach *Fayal* before the shipment. That the defendants had annexed to their letter an estimate of the cost of the seed and charges payable at *Fayal,* amounting to 8,517 dollars and 6 cents, and requested the plaintiffs to make insurance, for the account of the defendants, to cover the amount of the cost of the seed, being 5,675 dollars, with the premium, to *Fayal,* and also from *Fayal* to a port in *England* or *Ireland,* the defendants expressing their wish to be fully insured, and that the whole might be done in one policy, if the plaintiffs thought it best. The defendants added, " We have had some conversations with your Mr. *Thornly,* regarding this shipment, who, with us, apprehending a decline on bills, expressed a willingness that we should draw for about the amount of invoice, which we may avail ourselves of; and shall rely on your best exertions for our interest in the business. The shipment determined on, as before mentioned, is for our joint account, the

B. and H., merchants in *New-York,* addressed a letter to *M.* and *T.,* merchants in *Liverpool,* informing them of their being about to ship to them a cargo of flaxseed, and instructing them to make insurance, &c., and added, " the shipment is for our joint account, the proceeds, after deducting insurance and other charges accruing thereon, you will place to the credit of each of us, individually, one half." *M.* and *T.,* in their answer to this letter, acknowledged that the net proceeds were to be placed to the credit of B. and H. respectively, in equal proportions. B. and H. after the shipment, individually, drew separate bills, for 800l. sterling each, on *M.* and *T.,* which were accepted and paid by them. *M.* and *T.* afterwards brought an action against B. and H. to recover the balance of an account accruing on this transaction, in which they had charged the amount of the two bills of exchange paid by them to the joint account of B. and H. It was held, that the defendants were not *jointly* answerable for the amount paid on these bills, they being accepted and paid, either on the personal and individual credit of the drawers, or on the credit of the fund to arise from the proceeds of the shipment, and it on the latter, it was on a divided and not a joint fund, though they were jointly responsible for all disbursements and expenses by *M.* and *T.* in the management of the property, until the net proceeds came into their hands.

NEWYORK,   proceeds, after deducting insurance and other charges accruing
August, 1814. thereon, you will place to the credit of each of us, individually,
MARTIN   one half.   Further advice will be seasonably given." This
v.   letter was signed by both defendants.
BUCK.

On the 30th *December*, 1809, the defendants wrote to the
plaintiffs, informing them that as the *Shepherdess* could take only
344 casks, they had shipped the remaining 56 casks on board
the ship *Honestus*, and enclosed the bills of lading and invoice
of the whole.

On the 7th *Sept.* 1810, the defendants wrote to the plaintiffs,
and after mentioning their unfortunate shipment, as having been
a very perplexing business, they add, and " we intend to put
the thing right; so far as relates to us, when we get your ac-
counts."   This letter was also signed by each of the defend-
ants.   These letters were received by the plaintiffs, who, in one
of their answers, say, " we observe that the net proceeds are
to be placed to your credit respectively, in equal portions."

The flaxseed shipped by the *Shepherdess* arrived at *Fayal*,
in *January*, 1810, and that by the *Honestus* some time after-
wards.

*Buck*, one of the defendants, drew his separate bill on the
plaintiff for 500 pounds sterling, which was duly accepted by
them, and paid on the 4th of *May*, 1810.   *Huntington*, the other
defendant, also drew his separate bill on the plaintiffs for 500
pounds sterling, which was also accepted and paid by them on
the 7th of *May*, 1810.

The plaintiffs procured insurance to the amount of 1,200
pounds sterling on the flaxseed, per ship or ships from *New-York*
to the *Azores*, and thence to *Liverpool* or *Ireland*.

The plaintiffs claimed of the defendants a balance of account
of 888*l*. 5*s*. 5*d*. sterling; they charged the two bills of 500*l*.
sterling each, the premiums of insurance paid by them, and cre-
dited the net proceeds of the sales of the flaxseed by the *Ho-
nestus*, and the amount of an average loss recovered from the in-
surers on the flaxseed by the *Shepherdess*, deducting the subscrip-
tion of one of the underwriters, who had become a bankrupt.

By an endorsement of the adjustment made on the policies of
insurance at *Liverpool*, it appeared that the 56 casks shipped in
the *Honestus* arrived at *Liverpool* in the same vessel; that 243
casks, transhipped from the *Shepherdess* to the *Dryad*, also arrived

sale at *Liverpool*, and that 73 casks, transhipped from the *Shep-* herdess on board the *Rachel*, were lost off *Fayal*.

The defendants contended, 1. That they were not liable *jointly* for the two bills of exchange; 2. That the premium on the subscription of the insurer, who became bankrupt, ought not to be charged, there being no evidence that it was paid to him; 3. That the plaintiffs ought not to have settled the loss on the policies as for 73 casks lost, but as for 100 casks.

The cause was argued by *D. B. Ogden* and *S. Jones*, jun. for the defendants, and *T. A. Emmet*, for the plaintiffs.

THOMPSON, Ch. J. The principal items in the plaintiffs' account upon which this action is founded, are the advances upon the two bills of five hundred pounds each, drawn by the defendants *separately* upon the plaintiffs, and paid by them; and the question arising upon this part of the account is, whether the defendants are *jointly* liable for the repayment of the money thus advanced. There can be no doubt but the shipment of the flaxseed, the proceeds of which were to come into the hands of the plaintiffs, was on the joint account of the defendants. They so expressly declare in their letter of the 25th of *November*, 1809; but in the same letter they direct the proceeds, after deducting insurance, and other charges accruing thereon, to be placed to *their individual credit, each one half.* This was the letter of instructions under which the plaintiffs acted.

When these bills were drawn and paid, it was undoubtedly supposed by all parties that the proceeds of the flaxseed would be sufficient to answer them. The flaxseed, until sold, might be considered a joint concern, but it is evident that the proceeds were not to be so considered and treated. They were to be divided, and placed to the individual credit of the defendants, thereby making their interest therein separate and distinct. Suppose the defendants had not drawn until after the proceeds had come into the hands of the plaintiffs; one of them could not have drawn for the whole, nor would the plaintiffs have been justifiable in paying the whole to the individual draft of either. Such payment would have been without authority, and directly in the face of their instructions.

Admitting the bills to have been drawn upon the credit of

these proceeds will not alter the case. The drafts were adapted to the situation of the funds. They were drawn by the defendants individually, for the purpose of corresponding with their individual interest in the proceeds, and if the bills were paid upon the credit of those proceeds, it was upon their credit as a divided and individual fund; for such only was the situation and condition on which they were to be held by the plaintiffs. That this was perfectly understood by the plaintiffs, is evident from the whole course of the transaction. The letter of instructions to them is plain and explicit on this point, and the acceptance and payment of the bills drawn by the defendants separately, was a full recognition of the individual interest of the defendants in the proceeds of the flaxseed. The plaintiffs, in their letter of the 1st of *January*, 1810, say, "We observe that the net proceeds are to be placed to your credit separately, in equal proportions." This was before the bills were accepted and paid, and if they were accepted and paid upon the credit of these proceeds, it must have been upon their credit as a divided, and not as a joint, fund; and so far as the personal credit of the defendants was the inducement or ground upon which the bills were accepted and paid, it must have been their individual, and not their joint, responsibility. This follows, as matter of course, from the manner in which the bills were drawn ; so that in whatever point of light the question is considered, it is evident that the defendants cannot be made jointly responsible for these bills.

With respect to the other part of the account, they are jointly chargeable. It consists of advances made for their joint benefit, and of expenses incurred in the management of the property whilst they continued jointly interested in it; for such was their situation until the proceeds should come into the hands of the plaintiffs. The defendants say, in their letter of the 25th of *November*, the shipment is for *our joint account ;* insurance is to be made for *our* account ; and the adventure is treated as a joint concern throughout, except as to the disposition of the proceeds.

This part of the account is sufficiently proved. The principal *item* is the premium of insurance, and the case furnishes abundant evidence from which to infer payment of it by the plaintiffs. The defendants direct insurance to be made; and

insurance was, in fact, made. This is not only proved by the insurance broker, but the policies are annexed to the commission; and the broker swears that the plaintiffs paid him the charges for effecting the insurance, and which, as contained in the account, are the usual and customary charges. If the plaintiffs have sufficiently proved their account, and the defendants were not satisfied with the credit given for the proceeds of the flaxseed, it was incumbent on them to furnish proof of the mistake, or to show that more had been received than was credited. This was proof to be made out on their part.

But the proceeds of the flaxseed are more than sufficient to pay the account, exclusive of the bills. The plaintiffs must, therefore, be nonsuited in this action, and the proceeds of the flaxseed, after deducting that part of the account that is chargeable to the defendants jointly, must be carried to their credit separately, each one half.

SPENCER, J. and YATES, J. were of the same opinion.

VAN NESS, J. The letter of the 25th of *November*, 1809, and which is the foundation of the plaintiffs' agency in this adventure, shows expressly, that this shipment was on the joint account of the defendants, who must, in this transaction, be considered as partners. From the same letter, it appears also that the defendants contemplated to anticipate part of the proceeds of the flaxseed, by drawing upon the plaintiffs to an amount therein stated. The defendants' letter of the 30th of *December*, 1809, also speaks of this as a shipment on their joint account. The contract, as originally entered into and understood by the parties, was that the plaintiffs were to manage the adventure at *Liverpool.* They were to advance the premiums of insurance, to pay the freight to, and charges at, *Fayal,* and to accept and pay the defendants' bills to about the amount of the invoice price of the flaxseed; and for this they were to receive the customary commissions. Unless this contract has been subsequently varied or altered, by mutual consent, it follows, that the defendants are jointly responsible for all advances made pursuant to it. That they are jointly liable for most of the charges contained in the plaintiffs' account, except the money paid upon the bills of exchange, is conceded. Now the acceptance and

payment of the bills formed as much a part of the agreement, as the payment of the other sums, and I am unable to discover why the defendants are to be considered as jointly held for the repayment of the one and not of the other. The whole was one entire concern, undertaken and conducted throughout under one and the same contract, and all the advances were made by the plaintiffs to facilitate and promote the same object.

The idea thrown out, on the argument, that the direction to place the *net proceeds* of the shipment to the separate credit of the defendants, rendered them severally, and not jointly, liable for the amount of the bills, would, if well founded, equally prove that they were severally and not jointly liable for the money advanced for the freight and insurance, and yet the latter is not pretended.

But it is said, that the bills drawn by the defendants being separate, the plaintiffs have varied or consented to an alteration of the contract as first entered into. Can this be true? If the letters referred to had been silent on the subject of the defendants' drawing, and the plaintiffs' accepting bills upon them, there would be some plausibility in this argument; but when this is expressly provided for, and the joint personal security of the defendants, as well as the whole shipment, thereby became pledged to the plaintiffs for their reimbursement, it would be an act of the highest injustice to permit the defendants to avail themselves of the defence now set up.

The payment of these bills in the form in which they were drawn can affect the joint responsibility of the defendants, if at all, in two ways only; either, because of the evidence which it affords that the contract was originally understood to secure to the plaintiffs their separate and not their joint responsibility; or, as amounting, by implication, to an alteration of the first contact, by substituting their several for their joint liability. For the first there is not a pretence, as I have already shown, and the second is equally destitute of foundation. A change of the original contract could be made only with the concurrence of both parties. In no part of the case is there any evidence that the plaintiffs assented to, or contemplated, any such change. Why should they? It was clearly not their interest to do so, and shall their security be diminished one half by mere implication? As to all the other advances, (with some trifling exceptions,) it is not disputed that

the original agreement is in full force. What foundation is there, then, for considering the contract changed, as to part, and remaining unaltered as to the residue? The case abounds with evidence to show that both parties considered the contract as unaltered from the beginning to the end of the transaction. The letters already referred to, and another, dated the 4th of *September*, 1810, prove this. The latter, which is from the defendants jointly, was written after the bills in question had been accepted, and after it was ascertained that this would turn out to be a losing adventure. In that letter they say, among other things, " We have received several communications from you relative to *our* unfortunate shipment of seed, and expect you to pay attention to winding up the same. The business has been a very perplexing one, and *we* intend to put the thing right, so far as it relates to *us*, when *we get your accounts*." Again, in another part they say, " *We* wish you not to force the sale, but give *us* an estimate of the probable result, that *we* may put you on a fair footing."

No man, who reads this letter, can doubt that the defendants, at that time, considered themselves jointly liable for all the moneys which the plaintiffs had advanced. The latter, indisputably, had no idea that, as to the money paid upon the bills, they were dealing with the defendants severally, and as to the residue of the transactions, jointly; that for one part of their advances under the same contract, they were to look to them separately, and for the remainder, jointly. This splitting up and dividing of this concern, which in its nature and object was, as it were, indivisible, never entered into their imaginations. This is evident from the manner in which they kept their books, from which the account, annexed to the case, was proved to be a transcript. The truth is, that with the manner in which the defendants were to avail themselves of the privilege of drawing upon the plaintiffs, the latter had nothing to do. The defendants were at liberty to adopt such mode in procuring the stipulated amount to be remitted to them as their interest or convenience dictated. The payment of the bills, in the form in which they were drawn, was purely for their accommodation, and was perfectly consistent with the terms of the original agreement. The plaintiffs' right of recovery is not founded upon the payment of

the bill as a separate, independent transaction, but upon the antecedent, original agreement between the parties, as defined by the letters which passed between them.

It has been urged, that the direction contained in the defendants' letter of the 25th of *November*, 1809, to place the proceeds of the shipment to their separate account, supports their defence. I think, on the contrary, that it operates decidedly against them. After the whole concern had been concluded, and "after deducting insurance, and other charges accruing thereon," then, and not till then, were the net proceeds to be placed to their separate credit. It appears to me, that the fair and obvious deduction from this is, that for the advances made by the plaintiffs, during the whole of the intermediate stages of the transaction, the defendants intended they should be jointly liable. I think, therefore, that the plaintiffs are entitled to recover the amount for which the verdict was taken. Some of the items in their account have been disputed on other grounds, but all my brethren, I believe, think that the objections made are unfounded.

PLATT, J. was of the same opinion.

Judgment of nonsuit.